**Robert Shawn TREFF, Plaintiff–Appellant,**

v.

**Kerry GALETKA, individually and as the Mailroom Supervisor at the Utah State Prison, Defendant–Appellee.**

No. 95–4012.

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1996.

Robert Shawn Treff, pro se.

Brent A. Burnett, Assistant Attorney General and Jan Graham, Utah Attorney General, Salt Lake City, Utah, for Defendant–Appellee.

Before KELLY, SETH, and HENRY, Circuit Judges.

HENRY, Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

## I. BACKGROUND

Plaintiff Robert Shawn Treff, appearing pro se, appeals the district court's order adopting the magistrate judge's recommendation to grant summary judgment to defendant Kerry Galetka. We affirm.

Mr. Treff, who was an inmate at a Utah state prison during the time his claims arose, filed a complaint under 42 U.S.C. § 1983 alleging that his rights guaranteed by the First, Eighth and Fourteenth Amendments were violated when Ms. Galetka, acting for herself and as the prison mail room supervisor, interfered with his outgoing mail. Mr. Treff alleged that between October 1990 and March 1992, sixteen pieces of mail were not processed by the prison mail room and consequently were never delivered to the addressees. After he filed three grievances, the prison grievance coordinator conducted an investigation by contacting at random three of the addressees Mr. Treff claims did not receive his letters. Of those, two responded that they had received the letters, but had not replied to Mr. Treff. The third inquiry was returned as undeliverable by the United States Postal Service. The grievance investigator concluded that the addressees of Mr. Treff's letters had chosen not to respond, and the investigation was closed. Mr. Treff maintains that the addressees, particularly his children and his mother, would have responded if they had received his letters.

## II. DISCUSSION

On appeal, Mr. Treff claims: (1) Ms. Galetka interfered with his First Amendment rights generally to communicate by mail, to associate religiously through the mail, and to access the courts via mail; (2) Ms. Galetka was liable for her actions and those of her subordinates in failing to process his mail; (3) genuine issues of disputed material facts exist, precluding summary judgment; and (4) the district court erroneously revoked his in forma pauperis status and ordered him to pay mileage and service fees.

Mr. Treff also attempts to raise on appeal the issue of his right to communicate with his legal counsel through the mail. Because he did not raise that issue in the district court, we decline to address it here. *See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Medical Benefit Plan,* 11 F.3d 1567, 1571 (10th Cir.1993) (issues not argued to the district court will not be considered on appeal). For the same reason, we do not address Mr. Treff's claim that the prison grievance procedure did not meet minimum standards required by law.

We review the grant of summary judgment de novo, applying the same standard as did the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). We view the record in the light most favorable to the nonmoving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991).

### A. Qualified Immunity Defense

Ms. Galetka raised the defense of qualified immunity. Therefore, we first address the threshold legal question of whether Mr. Treff has "demonstrate[d] that the defendant's actions violated a constitutional . . . right." *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). "On summary judgment, the

judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... If the law was clearly established, the immunity defense ordinarily should fail...." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). In a qualified immunity inquiry, "the very action in question does not have to have previously been held unlawful, [if] 'in the light of pre-existing law the unlawfulness [was] apparent.'" *Albright,* 51 F.3d at 1535 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

In this case, we must determine whether Ms. Galetka is entitled to qualified immunity from Mr. Treff's claims that she violated his right to access to the courts and his right to communicate by mail with others outside the prison. The district court found that Mr. Treff had produced no evidence that Ms. Galetka had interfered with his court mail and denied the court access claim. The district court also held that Ms. Galetka was entitled to qualified immunity because the law was not clearly established that prisoners had a First Amendment right to have their outgoing mail processed for delivery by the United States Postal Service, absent censorship or other restrictions on freedom of expression.

### 1. Right to Access to the Courts

■ In analyzing Ms. Galetka's qualified immunity defense, we first conclude that a prisoner's constitutional right of access to the courts is clearly established. *Nordgren v. Milliken,* 762 F.2d 851, 853 (10th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). We next address whether Mr. Treff stated a claim for denial of access to the courts. To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation. *Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir. 1978) (denial); *Kincaid v. Vail,* 969 F.2d 594, 603 (7th Cir.1992) (delay), *cert. denied,* 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993).

■ Here, Mr. Treff alleges two instances in which the prison mail system re-sulted in prejudice to his litigation: (1) he did not receive the magistrate judge's initial report and recommendation in this case, and (2) in another case, his objections to the magistrate judge's report and recommendation were received by the court after the due date, resulting in the court's refusal to consider them. Mr. Treff has not been prejudiced by any alleged prison mail room deficiencies in either instance. In the first, the court permitted him to respond to the magistrate judge's report, as if he had received it timely. In the second, if Mr. Treff's objections were mailed from the prison in a timely fashion, the court should have considered them. *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir.1989) (citing *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)), *cert. denied,* 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990). If the court failed to do so, the problem was with the court, not with the prison mail room. Mr. Treff also alleges that mail to and from the federal district court on three occasions took four, seven, and nine days, but he claims no prejudice as a result of these delays. Therefore, Mr. Treff has not shown that the prison mail room denied him his constitutional right to access to the courts. Ms. Galetka is thus entitled to qualified immunity from Mr. Treff's claim that she denied him access to the courts.

### 2. Right to Have Outgoing Mail Processed

■ We next consider Ms. Galetka's qualified immunity defense in the context of Mr. Treff's claim that a failure to process his mail violated his constitutional rights. He does not claim that his religious mail was censored because of its content. Therefore, we need not consider religious mail separately from other mail. Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment. *Procunier v. Martinez,* 416 U.S. 396, 408, 418, 94 S.Ct. 1800, 1809, 1814, 40 L.Ed.2d 224 (1974). *Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989), overruled *Martinez's* standard of review for limitations placed on a prisoner's

right to incoming mail, but *Thornburgh* did not overrule *Martinez*'s holding pertaining to outgoing mail. The *Thornburgh* Court recognized that "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials," *Thornburgh*, 490 U.S. at 413, 109 S.Ct. at 1881.

Under *Martinez*, limitations on a prisoner's First Amendment rights in his outgoing mail "must further an important or substantial governmental interest unrelated to the suppression of expression [and] ... must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811; *see also Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir.1995) (same). There is no suggestion that denying a prisoner the privilege of sending out any mail, or refusing to mail selected pieces of mail, was necessary in this case to serve "an important or substantial interest," *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811.

■ A refusal to process any mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights. *See id.* at 408, 94 S.Ct. at 1809. Accordingly, we hold that a prisoner's constitutional right to have his mail processed for delivery was clearly established at the time Mr. Treff's mail was allegedly not processed. *Cf. Procunier v. Navarette*, 434 U.S. 555, 562–63, 565, 98 S.Ct. 855, 860, 861, 55 L.Ed.2d 24 (1978) (on claim alleging wrongful interference with prisoner's outgoing mail in 1971–1972, prison officials were entitled to qualified immunity defense because constitutional rights of prisoners to outgoing mail had not yet been announced). Although this right was clearly established, Mr. Treff has failed to demonstrate that Ms. Galetka was responsible for the violation of such right. *See Albright*, 51 F.3d at 1533. Therefore, we affirm the district court's finding that Ms. Galetka is entitled to the defense of qualified immunity on this issue.

### B. *Failure to Establish the Elements of the Case*

■ We alternatively affirm the district court's grant of summary judgment, *see*

*Medina v. City & County of Denver*, 960 F.2d 1493, 1495 n. 1 (10th Cir.1992) (reviewing court is free to affirm lower court decision on any grounds supported by record sufficiently to permit conclusions of law), based on Mr. Treff's failure to prove essential elements of his case. To withstand summary judgment, the nonmoving party must establish the elements essential to his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. The nonmoving party is not required to produce evidence in a *form* that would be admissible at trial, "but the content or substance of the evidence must be admissible." *Thomas v. International Business Machs.*, 48 F.3d 478, 485 (10th Cir.1995). Inadmissible hearsay evidence in an affidavit will not defeat summary judgment. *Id.*

■ In this case, Mr. Treff, the party bringing the lawsuit, bears the burden of proving that his mail was not delivered, that Ms. Galetka was responsible for such nondelivery, and that Ms. Galetka acted intentionally or with deliberate indifference, *see Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Hines v. Boothe*, 841 F.2d 623, 624 (5th Cir.1988). The failure to establish any of these elements entitles Ms. Galetka to summary judgment; Mr. Treff failed to establish any of the three required elements of his case.

Mr. Treff maintains that if the mail had been delivered, the addressees would have replied. To oppose summary judgment, Mr. Treff proffered an affidavit from the paralegal for the prison contract attorneys stating that on December 30, 1992, she picked up a photocopy request for Mr. Treff consisting of an envelope that did not have a "received in mailroom" date stamped on it, and the material to be photocopied was an affidavit from Kenneth Volker. Mr. Treff has not made clear the relevance of this evidence given that Kenneth Volker is not one of the sixteen addressees Mr. Treff claims did not receive his letter.

Mr. Treff also submitted United States Postal Service tracer requests for four of the sixteen pieces of mail he claims were not delivered. Of those four requests, two indicated the mail could not be located, and two indicated the addressees did not respond to the inquiry. The information contained in the tracer forms shows only that the mail could not be located, not that it was never submitted to the Postal Service for delivery.

In his own affidavit, Mr. Treff stated that his letter to the American Jewish Congress, one of the sixteen allegedly missing pieces, was sent via registered mail, return receipt requested, but that he was not returned a receipt even though the mail room charged him for one. The mail tracer form indicated only that the addressee failed to respond to the postal inquiry, not that the letter was sent or that the receipt was returned. Mr. Treff also stated that he had asked his attorneys to send an affidavit stating that his letter to them was delayed, but no such affidavit appears in the record. Mr. Treff further claims that he sent a letter to his other attorney, who later told Mr. Treff that he had not received the letter after sixty days. Mr. Treff's statement of what the attorney told him is hearsay and cannot defeat summary judgment. Moreover, this letter was not one of the sixteen he claims were not delivered.

In response to the challenge that a number of factors, other than the prison mail room, reasonably could have caused his mail not to be delivered, Mr. Treff offers only the presumption that, generally, the United States Postal Service delivers mail. He maintains that the other possible factors, such as the addressee's decision not to respond, intervention by a third party, loss or misdelivery by the Postal Service, or loss by the addressee, would not have kept the addressees from responding to his letters.

Mr. Treff offered no evidence to support his main premise, that if his mail had been delivered, the addressees would have responded. He produced no affidavits from the intended recipients that they did not receive his mail. To the contrary, Mr. Treff does not dispute the results of the prison investigation that two of the addressees received his mail, but did not respond. He made no showing whatsoever that he had attempted to obtain affidavits by mail, telephone, or otherwise, from any of the sixteen addressees. His own belief that the addressees would have responded had they received his letters is not evidence.

Because Mr. Treff failed to establish any one of the essential elements of his case, Ms. Galetka is entitled to summary judgment. Similarly, Mr. Treff did not show that Ms. Galetka acted with the requisite deliberate indifference to state a claim under the Eighth Amendment. *See Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991) (Eighth Amendment claim requires showing of deliberate indifference to prison conditions by prison officials). The order granting summary judgment in favor of Ms. Galetka is affirmed.

### C. Assessment of Costs of Service

We turn to Mr. Treff's claim that the district court erred in assessing against him the costs of serving Ms. Galetka with the summons and complaint. Mr. Treff admits that during the course of this litigation his financial condition improved sufficiently so that he is no longer entitled to pauper status. He concedes that he properly was required to pay the filing fee under the rule established by this court in *Treff v. Bartell,* 38 F.3d 1221 (10th Cir.1994) (unpublished) (affirming district court's order to pay filing fee due to Mr. Treff's changed financial condition). He claims *Bartell* required him to pay the court filing fee, no more and no less. This case, however, differs from *Bartell* in that *Bartell* did not address the question of a service and mileage fee. Mr. Treff also claims that the district court was without authority to enter an order directing him to pay the mileage and service fee of $47.50 because it was entered after the summary judgment order. Finally, Mr. Treff claims the costs were a penalty imposed to punish him for having filed a grievance against the district judge.

28 U.S.C. § 1915(a) authorizes commencement and prosecution of a civil suit by a person unable to pay "without *prepayment*

 

of fees and costs." *Id.* (emphasis added). Section 1915(e) permits a judgment for costs "at the conclusion of the suit or action as in other cases." "[A]llowing the commencement of a suit in forma pauperis pursuant to 28 U.S.C. § 1915(a) does not preclude the court from assessing costs at the conclusion of the suit." *Olson v. Coleman,* 997 F.2d 726, 728 (10th Cir.1993). Costs include clerk and marshal fees. 28 U.S.C. § 1920; *see also Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir.1995) (noting that costs under Fed. R.Civ.P. 54(d) include clerk and marshal fees). We review the district court's award of costs under both § 1915 and Rule 54(d) for an abuse of discretion. *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992) (§ 1915); *Jane L.,* 61 F.3d at 1517 (Rule 54(d)).

 Leave to proceed without prepayment of fees and costs is a privilege, not a right. *Weaver v. Toombs,* 948 F.2d 1004, 1008 (6th Cir.1991). Courts have the discretion to revoke that privilege when it no longer serves its goals. *Murphy v. Jones,* 801 F.Supp. 283, 288–89 (E.D.Mo.1992). We have authorized the imposition of costs under § 1915 where the action is frivolous or malicious. *E.g., Olson,* 997 F.2d at 729; *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir.), *cert. denied,* 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981). We do not apply that rule here, because neither this court nor the district court found Mr. Treff's claims malicious or frivolous.

 We hold that when a litigant's financial condition improves during the course of the litigation, the district court may require him or her to pay fees and costs. *See Weaver,* 948 F.2d at 1014; *Wiideman v. Harper,* 754 F.Supp. 808, 809 (D.Nev.1990); *Carter v. Telectron, Inc.,* 452 F.Supp. 939, 942 (S.D.Tex.1976). We do not reach the question of a sliding scale for indigent litigants based on their ability to pay, *see Wiideman,* 754 F.Supp. at 810–12, because Mr. Treff does not claim that he cannot afford to pay. We perceive no abuse of discretion or retaliatory motive in the district court's decision to order Mr. Treff to pay mileage and service costs of $47.50.

The judgment of the United States District Court for the District of Utah is AFFIRMED.